May it please the Court, I'm Philip Ross and I represent Appellant American President Lines. I'd like to reserve five minutes of my time. Your Honors, this case involves an action brought by APL seeking monetary damages under Section 303 of the LMRA. As part of a summary judgment proceeding, the District Court's sua sponte raised a standing issue and found that while APL had Article 3 standing, it supposedly lacked statutory standing under Section 303. It therefore entered judgment in favor of the Defendant Union, the IOWU. Mr. Rusty, can you ask me why was this not remedied by a timely petition to vacate the arbitration award? Because we are not challenging the arbitration award itself. The arbitrator was asked to interpret the language of the contract. He did what he was supposed to. He interpreted the language of the contract. What we are seeking is statutory damages, monetary damages, the $52,000 we had to pay as in lieu time card payments during the arbitration proceeding. Our claim is that the Union acted coercively by pursuing and obtaining an arbitration award, which we say violated Section AE of the NLR. But isn't the key factor that the arbitrator found that the Union had previously done this work at Seward a fact that would be binding on APL in the subsequent litigation? The arbitrator found that the Union had previously performed cargo handling work for Samson. At Seward. At Seward through a different stevedoring company, Northstar. We don't dispute that finding. That finding, however, does not, and that's an interpretation of the contract. We don't dispute that. What, again, we are arguing is that the Union coercively obtained an arbitration award, an interpretation that violates Section AE because it creates a de facto hot cargo agreement, a Union signatory agreement. But if it's work that the Union had previously done, wouldn't it be a complete defense to the ADE violation that it was essentially attempting to preserve work that otherwise should have gone to its members? No, because the work that it had performed, it had performed for Samson. Samson was not part of the bargaining unit. So what it's trying to do, the Union has a dispute with Samson. It wants to continue to perform cargo handling work for Samson rather than have Samson now use its own VIVA representative employees to perform that work. The work that the Union did for Samson was not done under the AALA. It was work that was done for Samson. The fact that the Union has previously done that kind of work doesn't cause all of this to be work preservation. That's the NLRB's Nevins Realty case, which is essentially right on point here. And what's happened here is the Union sought and obtained from the arbitrator an interpretation that says, APL, you're required to have your cargo handling work, even though it's done by Samson, performed by ILW labor. But that doesn't have to be work that's done within the bargaining unit. It simply has to be work that is done by a Union signatory. So the arbitrator said, Samson can continue to do this work, but it has to now sign a compliance agreement with the Union saying it'll use ILW work. That is a classic Union signatory interpretation. It says North Star, APL, you can have North Star do the work, but North Star is not part of the APL multi-employer bargaining unit. That is classic Union signatory interpretation. That's an AE violation. The Union acted coercively in violation of Section 8B4 IIA by seeking and pursuing and obtaining that kind of an interpretation. And therefore, we are entitled to seek our monetary damages under Section 303. Does the fact that MEBA and your opposition came to an agreement that Seward is their port have any effect on that? It doesn't because Samson is the party who determines who they're going to use to perform that work. The Union and MEBA said the ILWU gets the work, but Samson said after that and being aware of that, we don't care. We are going to continue to use our own established employee workforce, which is the MEBA represented workforce. But all of this ultimately goes to the merits, and this issue was decided by the district court on a lack of standing argument. And even the Union essentially concedes that it doesn't even address the lack of standing. So your position is rather than have us decide it, what we should do is vacate the dismissal and remand it to the district court so that it can consider the merits of that argument. That's exactly right. That's exactly right. With respect to the standing issue, if you'd like me to address it, under the NLRB is secondary boycott concepts. There are primary employers and secondary employers. We submit that the dispute here is really a dispute between the ILWU and Samson and that APL is a secondary employer who has become enmeshed in that dispute. The Union, on the other hand, claims that its primary dispute is with APL. But for statutory standing purposes, it doesn't matter because the Ninth Circuit has held that both primary employers and secondary employers have statutory standing. So either way, whether we are correct, as we submit is appropriate, that we are in fact a neutral employer that has become enmeshed in this dispute between the ILWU and Samson, or whether the Union is correct that their dispute is really with us, there is statutory standing. And there is no dispute that the Union's alleged AP4 conduct, its pursuit of the grievance and arbitration in this case, was aimed directly at and hit APL. So we meet the statutory standing requirements under Section 303 as set forth by the Ninth Circuit in its Fulton case. Did the general counsel of the NLRB address standing at all? No. The NLRB, we filed an unfair labor practice charge. I know what you did. And the board administratively concluded that there wasn't a violation but did not issue, did not have any kind of adjudicative hearing before an ALJ where all the evidence could be presented. Case law is well established that an administrative dismissal by a regional director does not bar a Section 303 action. You don't have to have NLRB approval or an agreement that there's been an AP4 violation to bring a Section 303 action. So the fact that the district court relied on that to find no standing is erroneous under the law. The only other issue that the... So he treated it almost, what, as an exhaustion issue? He said that he didn't simply defer to it. He said that we were procedurally barred from having standing to bring the action because there was a prior... So almost a res judicata? Well, he didn't use those words, nor could he, because it's clear that that kind of an administrative dismissal that's not an adjudicative action is not res judicata. And then the only other thing the district court relied on with respect to its standing finding was a clearly erroneous belief that the arbitrator had found that there was no AP4 violation. Well, there were two arbitration decisions, an early one and a later one. And in the later one, the Alaska arbitrator had been instructed by the coast arbitrator in the interim to not make any findings about the legal impact of his decision on external law, which was outside his jurisdiction, and did not do so. So there is no finding by the Alaska arbitrator in the final decision that addresses any AP4 violation one way or the other. And the district court's belief that the arbitrator made such a decision and therefore we could not bring a 303 because that was binding on us is just clear error in terms of that factual finding. Now, again, the union doesn't even really seriously try to argue that the lack of standing issue here was appropriately decided. Rather, it tries to raise other issues. It raises a statute of limitations issue, which is clearly without merit. We are bringing a Section 303 damage action. The Ninth Circuit has made clear in its Fishbach and Hyatt-Chalet cases that the appropriate limitations period for a Section 303 damages action as brought here is the state law limitations period for an action founded upon a violation created by statute. In Alaska, that's two years. We brought our 303 action within two years after the final arbitration decision. But that question is not really before us, is it? Well, the union has raised it in its brief. Their appellate brief doesn't address standing at all. It says you ought to decide this case on these other issues that the district court below didn't decide. And they raised the statute of limitations as a new issue that you should decide. We don't think that you should decide it, but we don't think it's correct in any event because it's a two-year statute. It's not a shorter breach of contract Section 301 statute to vacate an arbitrator's award because we're not seeking to vacate the award. In fact, the award as issued by the arbitrator is an integral part of our Section 303 claim because it's the interpretation given by the arbitrator to the AALA as sought by the union, which forms an integral part of the union's signatory argument. So we're not seeking to vacate the award. The award is going to remain. That's not an issue for us. We want the $52,000 in damages that we were forced to pay during the processing of this arbitration by the union's submitted time card. And I'll reserve the remainder of my time. Anybody have any other questions? Thank you very much. May it please the Court. Good morning. My name is Robert Remar, representing the appellee, ILWU Unit 60. I want to jump right into responding to a couple of points that was made by opposing counsel. The Court asked, why didn't APL file a timely petition to vacate? The answer was, because we're not challenging the award. First of all, if you just read the complaint, the complaint itself clearly indicates that they're challenging the award. If you read their opening brief, they specifically say on page 27 that the 303 action is, to use their phrase, expressly premised, unquote, on the legality of the arbitration award, at page 27 of their opening brief. They also go on to do an analysis of the statute of limitations with the starting proposition that the time clock for accrual of the action begins when the arbitration award is issued. Everything in their complaint, all of their claims are based on, as they say, expressly premised on, quote, unquote, their claim for a challenge to the legality of the arbitration award. Mr. Remar, can I back up to the first thing you said? Can you point me to the language in Section 303 that establishes any congressional intent to require the filing of a petition to vacate before APL can proceed with its Section 303 claim? I cannot, Your Honor, and the reason is because it's not there. And the reason why it's not there, we submit, is because 303 really isn't designed to deal with the type of claim that's being presented here. And I think this is what the district court was getting at when it talked about standing. But the language pretty broadly says that any party that's injured, and APL's injury is we have to pay these in lieu time card payments as a result of the arbitrator's award, can bring an action. And one of the grounds for bringing the action is a violation of 8B by the union in connection with an arbitration proceeding. So I'm having a hard time understanding the argument that they can't do what they did. Because the Ninth Circuit held in the case of Atchison, which we cite in our supplemental authorities letter, specifically holds that 303 does not, as your question initially indicated, does not cover issues about the legality of an arbitration award. It doesn't cover issues about 8E violations. And in that case, very similar facts, the employer was seeking to recover payments that it made to employees pursuant to an arbitration award that it alleged was an 8E violation. They were seeking to recover. But I thought the problem in that case was that they were third parties. Isn't that a distinguishing? Is that the Hanford case? No, Your Honor. It's the Atchison case versus Atchison, Topeka, versus Teamsters Local 70. And it's at 511 Federal Reporters Second, 1193. It's a 1975 case. It's the one where the Ninth Circuit adopted fully the district court, Judge Peckham's decision in full. And so they held that because 303 is silent about issues of 8E violations and 8E, of course, dealing with the illegality of an arbitration award, 303 does not allow for that type of a claim or a theory to recover damages, even though in the Atchison case, the employer was seeking, as APL is here, to recover wages or monies that were paid to the bargaining unit employees. Well, the worry that I have is that it seems to me like the NLRB confirms that the union can violate 8B-4 by advancing in an improper interpretation of a contractual closet arbitration. It seems to me like the New York Post case, the Long Elevator case, are both particularly significant in that. And, therefore, a union that violates the moment it pursues arbitration with an unlawfully, and I read, unlawful secondary motive, that that's something they can do? The board, in our case, did not hold that. The board, in our case, held that there was no secondary motive. I'm sorry. Did you say the board here? Well, as I'm trying to figure out, I mean, they want to pursue this particular action. They want to do it. It seems to me that I'm looking at cases where the NLRB has allowed that to happen, and I'm trying to figure out why, then, should it not happen here? Yes. Your Honor, there are numerous cases, especially in the longshore industry, which our case concerns, where the courts, D.C. Circuit and Second Circuit, D.C. Circuit in the Cal Carthage case and the Second Circuit in the Bermuda container case, held that it's perfectly lawful for the bargaining unit agreement to, and any arbitrations interpreting it, to restrict the release of the signatory employer's control over work, to restrict that release, to require that if they're going to release it, the work has to be performed by their own employees, the primary longshore bargaining unit. Those cases also held that you need to look at the scope and definition of the bargaining unit to determine what's primary and what's secondary. In other words, as the Maui trucking decision in the Ninth Circuit held, you need to, for an e-analysis and secondary analysis, you need to do an analysis that is coextensive with the scope. That's the term they used, coextensive with the scope of the bargaining unit. In all of these longshore cases, what we have is confirmation that it's multi-port, multi-employer, and most importantly, that we just have a single integrated pool of longshore workers. Contrary to opposing counsel, our position and claim is a lot more selfish than he indicates. We're selfishly trying to preserve the work just for the longshore bargaining unit. We don't care about SAMHSA employees. We don't want to represent them, and the arbitration award doesn't say anything about us representing them. We don't want to apply our longshore contract to SAMHSA. We don't care about that. What we want to do is have the arbitration award enforced to its terms, which says the traditional longshore work performed by our bargaining unit needs to be preserved, and that work needs to be performed by our integrated pool of longshore workers. Are you arguing that we should answer all these questions in this case? Yes, Your Honor. Are you then sort of conceding that APL has statutory standing? This is how I would put it. I think the short answer, to be direct with you, which I have a duty to, is yes. The explanation is that I think it would be unfair to the district court to characterize it as getting it wrong in terms of standing. I think what the court did in the district court was it put maybe a misleading label of standing on an analysis that was really about the merits. If you look at the decision, all of the merits issues are nailed down in the district court decision. He talks about what the arbitration findings are. He talks about that APL has control over the work. He talks about that it's a colorable claim. He talks about that it's traditional longshore work. And he makes it very clear in his analysis that he's dealing really with merits. And I think the overlap, and there is an overlap analytically between standing, the special 303 standing and merits issues, there's an overlap there because of the provision in 303 that says you have to have an injury by reason of the illegality. But if that's the case, then why didn't the district court simply grant summary judgment rather than order dismissal of the action for lack of standing, which is not a merits-based decision? All of the ‑‑I don't know the answer to that. Well, my worry about what you just said is I got the idea that you had more arguments to present if we went back to merits argument, that you haven't presented all the arguments that you would have made at a merits argument. No, Your Honor, both parties presented fully all of the merits issues because the context for this was ILWU, I filed a motion for summary judgment, submitting everything that we think is necessary to determine the merits based on their not being disputed material facts. APL filed an opposition, and they submitted some of their ‑‑ that was fully briefed. The court then, the district court then said, you know, wait a minute, guys. I'm really interested in standing, and nobody addressed standing. Can you address that for me? We did that. We did supplemental briefing. And then what the district court opinion is is basically integrating the merits analysis using a label, which I think it sounds like we all agree may not have been artful or precise, using a label of standing. But if you see, the facts analysis are all about merits. The legal cases that it cites are all about merits. So if, in fact, we decided to do the merits here, are there extra arguments you would care to present to us? Yes. And you did not present it in your briefs? No. Isn't that a problem? No. What do I do? You just want me to let you go on and make more briefs? He wants to win. No, I want to win, Your Honor. I understand that. What if you lose without all these extra arguments you want to make? I guess I'm not understanding what you mean by extra arguments. Well, my worry is, have you given the district court all of the arguments that you would make on merits, and you say yes? Yes. The next question was, have you presented all the arguments you want to make to me on merits in your briefing? And I understood you say no. No, I said yes. Oh, okay. No, I said yes. All right. I thought I heard no, too. Oh, I'm sorry. Yeah, that's why maybe I misunderstood the framing of the question. We've submitted all our arguments on the merits in our brief to this court, and so has APL, despite its claim. And you may hear them come back and say they didn't. But if you look at their brief, first of all, all the facts that are in their opening brief deals with the merits facts. They deal with the argument issues, page 31 of their opening brief to page 40, and page 44 for another 13 pages. That's 22 pages of their opening brief on the legal issues, plus you add the facts part. Then on their reply, 100% deals with the merits issue. So to say that this has not been fully briefed in either the district court or before this panel is factually incorrect. So we really wouldn't be affirming the district court on the grounds that the district court decided the issue. We'd be affirming on the merits. Yes. But you would, my submission, our submission to the panel here is that this panel should affirm all of the findings of fact and of law by the district court. But just give it a different label. Instead of calling it standing, you call it merits. Isn't that what I just said? Maybe so, Your Honor. I had to say it in a longer. It wasn't a trick question, Counselor. I was just trying to figure out what you want us to do. Yes. Okay. Okay. Cover that. I think there's an interesting issue on the statute of limitations for the panel to decide. And I think it's an issue of first impression for the Ninth Circuit and maybe for the nation as well. And the issue is this. Under Kaiser Steel v. Mullen, the U.S. Supreme Court says that you cannot prevent an employer from using 8E as a defense to a petition to enforce an arbitration award where the arbitration award may, in fact, violate the federal law under Section 8E. So the question becomes, and I think this is what our statute of limitations argument really raises, that the question becomes, does that mean under Mullins that there is no longer a statute of limitations for a petition to vacate when the theory of vacating is an 8E violation? Now, we submit that Mullins does not mean that you throw out the statute of limitations for a timely petition to vacate. And the reason why it doesn't mean that is because in Mullins, the Supreme Court specifically said, we cannot prevent as a defense an 8E claim because the courts cannot be in the business of enforcing and using judicial authority to enforce something which violates federal labor law. That's very different than the question of does that mean then that a party can sit back and ignore the statute of limitations period that's applicable for vacating an alleged 8E obligation. We don't think Mullins requires that, and we think it would be throwing out all of the case law and the policy behind the need for expedited labor arbitration resolution and not letting these things fester and go stale. Let me give you a hypothetical. Imagine that APL actually implemented the award and cut off its business with Sampson in Seward. Wouldn't Sampson then have the ability to file a Section 303 claim? Yes. On the theory that that was an 8E arrangement, they'd be wrong as a matter of the merits, but yes, they do. And that would be governed by the two-year statute of limitations. Correct. But the statute is different as it applies to APL. Right, and the reason is because only APL has standing to vacate the arbitration award. Well, that may be true, but if we assume that Section 303 stands on its own and can be raised by any party who is injured by an 8E or 8B violation, then wouldn't the same statute of limitation apply whether it's APL or Sampson bringing the cause? No, Your Honor, because the question is really about what the nature or how you characterize the actual cause of action that's being brought. So with Sampson, their theory would be, you know, we're being harmed because they took away our business. With APL, it's as they state in their pleadings, we're being harmed because we're bound by this unlawful 8E arbitration decision. Those are very different. And the case law makes clear that you don't just willy-nilly apply a blanket rule for 303 limitations period. What you do is you look to the cause of action, and then you apply what the nature of the cause of action is. You apply the state law limitations period that corresponds to the actual nature of the claim under 303. I would also submit, and this is one of the cases that we presented in our supplemental briefs, that the decision by the Labor Board, the NLRB, and the decision by the D.C. Circuit Court in the Cal Carthage case that dealt with the West Coast ILWU Longshore Bargaining Unit, very analogous to the Alaska Statewide Bargaining Unit, also establishes that there is no 8E violation. And it also establishes that there's no unlawful union signatory clause here either. In footnote 14 of the Cal Carthage decision by the D.C. Circuit, they make a point of saying there that it's perfectly lawful in order to preserve the work of the longshoremen, it's perfectly lawful to restrict the release of the carrier's cargo to subcontractors who are not employing ILWU. And they make it clear that the reason why this is lawful goes back to the National Woodwork decision, which is we're using these bits of analysis and formulas to get at the fundamental question of, does this have the intent and effect of protecting the workers in the bargaining unit, or is it designed to organize some other bargaining unit or to impose the longshore agreement or the disputed agreement on a second bargaining unit or second group? Cal Carthage makes it clear that you can properly, and this happened up and down the West Coast as a result of Cal Carthage, the employers can properly stop contracting with non-ILWU employers, take in the work in-house because they have control over the assignment of the work, and actually do it to the point of where they are required to construct new facilities in order to take it in-house, which was the situation in Cal Carthage where the employers agreed and the court allowed for the ILWU employers to construct brand-new facilities in order to allow for ILWU longshoremen to be performing that work. They also said in footnote 14 that it would be perfectly lawful for one of these non-ILWU companies out there to join the employer association under the contract, and by joining the employer association, they're bound by the ILWU agreement, and they can then lawfully employ the pool of longshore workers that the contract protects. That's not secondary. It's primary. The board found it so, and the D.C. Circuit found it so. This is the same. This refutes the argument by APL that somehow because the arbitrator says that SAMHSA could join the AALA association or somehow join in agreeing to the master agreement, that that somehow makes it a union signatory clause. It does not. It would be union signatory if SAMHSA joined in order for its MEBA employees to be covered, but we don't want that, and we would not allow that, and the arbitration award does not allow that, most importantly. The arbitration award actually prohibits a union signatory-type arrangement because it requires that the work be kept in the single pooled statewide registered longshore workforce. Okay. Counsel, you are over your time. Thank you very much. Thank you. Very helpful. Mr. Ross, I think you have plenty of time left. Yes, I don't think I'll use all of it, Your Honor. Okay. Go right ahead. First, with respect to the Atchison case that counsel described. The problem with that case was that it alleged only an 8E violation. It didn't allege any 8B4 violation, and the court said without an 8B4 violation, you can't bring a Section 303 claim. Well, we are clearly bringing an 8B4 claim that the union coercively obtained, acted coercively in obtaining this arbitration award, so the Atchison case does not in any way preclude our bringing this. The district court does not address the union's signatory argument in its order. It mentions that this is one of the claims we make, and it's describing a complaint, but in its analysis, its analysis is a standing analysis and says you don't have standing for two reasons, because the NLRB made an administrative non-adjudication determination, which is an error of law, and because the arbitrator found an 8B4 violation, which is a factual error. It nowhere, nowhere mentions the union's signatory argument, our primary argument, doesn't address it at all. Counsel, in his main brief to the court, mentions it in a footnote, simply saying, oh, an APL's union's signatory argument is a misinterpretation and gives no analysis. So they didn't even argue it in their opposing brief. Now they want to try to argue it through a submission of a supplemental letter citing old cases that were decided many years ago that they could have addressed in their brief but didn't, and they want to argue it for the first time in oral argument before this court. That's inappropriate. The court should not be deciding merits issues for the first time when the district court never addressed it, when it wasn't argued in any substantive way in the appellee's main brief. It's inappropriate for them to try to raise merits arguments for the first time before this court. And finally, I would simply direct the court's attention to the case of In Re Newspaper and Mail Deliveries Union, which is found in footnote 7 on page 23 of our reply brief. And that simply stands for the proposition that arguing for and obtaining an arbitrator's interpretation, which creates an interpretation of a Section 80 violation, is a separate and independent violation of Section AP4, even if the union's motive in pursuing the arbitration was not secondary. So you don't have to have both an AP4 double IA and an AP4 double IB, which is the unlawful motive part. You just need one or the other. We've argued both, but clearly the union's signatory language, as interpreted by the arbitrator, would be a separate and independent violation. And unless the court has other questions, I'm prepared to submit. I think not. Thank you very much. The case just argued is submitted.
judges: Tashima, Tallman, Smith